UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FRANCESCA MANHEIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM LIFE INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

COMES NOW Plaintiff, Francesca Manheim, and for her claims and causes of action against Defendant, Unum Life Insurance Company of America, states as follows:

### PARTIES

1. Francesca Manheim ("Manheim") is a resident and citizen of the State of Missouri.

2. Unum Life Insurance Company of America ("Unum") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Unum in this action.

### JURISDICTION AND VENUE

3. Manheim brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

<u>INFORMATION REGARDING TRIAL</u>

8. No jury trial is allowed under ERISA law.

<u>STATEMENTS OF FACT</u>

9. Until March 21, 2021, Manheim was an active musician with the Kansas City Symphony ("Symphony"). She was an accomplished player, reaching the level of "second violin."

10. Playing the violin required Manheim to engage in frequent sitting and constant arm reaching motions. In addition, playing the violin required Manheim to sit in a static posture for prolonged periods of time, with arms and hands extended. It also required her to assume awkward postural positions, such as tilting of the head and pinning the body of the violin between her chin and the upper body or shoulder and repetitive, back-and-forth arm movements to manipulate the bow.

11. The Symphony sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

12. The Plan constitutes an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).

13. The Plan offered disability benefits to qualifying Symphony employees, including Manheim.

14. At all relevant times, Manheim has been a participant and a covered person under the terms of the Plan.

15. The Symphony is the administrator of the Plan.

16. The Symphony delegated or attempted to delegate the function of issuing LTD claim

2

determinations to Unum.

17. The Symphony and Unum entered into an administrative services contract through which the Symphony paid Unum for acting as claim administrator.

18. The Plan provided that employees would be entitled to receive LTD benefits if they became "disabled." The Plan defined "disabled" as follows:

1. You are unable to perform the **material and substantial duties** of your **regular occupation** and are not working in your regular occupation or any other occupation

or,

2. You are unable to perform one or more of the material and substantial duties of your regular occupation, and you have a 20% or more loss in your **indexed monthly earnings** while working in your regular occupation or in any occupation.

You must be under the regular care of a physician unless regular care:

- will not improve your disabling condition(s); or
- will not prevent a worsening of your disabling condition.

19. In approximately 2019, Manheim began experiencing pain in her neck, back and arms while playing violin.

20. On January 27, 2021, as a result of persistent thoracic and lumbar spine pain, Manheim underwent imaging studies ordered by her physician, Amita Narla, MD. These studies revealed several neck and back abnormalities which correlated with Manheim's reports of pain. These studies revealed:

## Study Result

Impression

1. Mild right subluxation of L2 on L3. Moderate to severe degenerative disc disease at L2-L3 with perhaps slight compression or impaction of the apposing endplates.

2. Mild thoracolumbar kyphosis, with left convex lumbar curve.

3. Grade 1 anterolisthesis of L5 on S1 with moderate degenerative disc disease.

4. Otherwise mild diffuse thoracic and lumbar spondylosis.

5. Moderate degenerative disc disease at C5-C6 and C6-C7.

3

21. After reviewing the imaging results, Dr. Narla referred Manheim to a pain specialist, Usman Latif, MD at the University of Kansas Medical System. Manheim presented to Dr. Latif on February 1, 2021 and reported back and shoulder pain, stiffness, and tightness. She rated her pain as 6/10, and described it as aching, stabbing, tiring, nagging, burning, penetrating, and throbbing. Manheim reported that her symptoms were exacerbated by sitting, standing, bending, and during attempts to move her head. She also reported that arm extension exacerbated her pain.

22. On February 1, 2021, Dr. Latif found that Manheim exhibited trigger points and referred pain in the right trapezius, levator scapulae, and thoracic paraspinal muscles. She further demonstrated right low cervical paraspinal tenderness and painful stiffness with attempts at range of motion. Her lumbar spine was tender at L2-3, which correlated with images showing subluxation and severe degenerative disc disease at this level.

23. Dr. Latif noted an MRI of Manheim's right shoulder taken in 2016 revealed that she suffered from an unrepaired labral tear.

24. On February 1, 2021, Dr. Latif assessed Manheim as suffering from the following conditions:

1. **Cervical radiculopathy**
2. Lumbar radiculopathy
3. Myalgia, other site
4. DDD (degenerative disc disease), cervical
5. DDD (degenerative disc disease), lumbosacral
6. Myofascial pain
7. Muscle spasm

25. On February 22, 2021 Dr. Latif performed trigger point injections targeted to Manheim's right upper trapezius, right levator scapulae, right thoracic region, and right cervical region. Dr. Latif used a size 27-gauge needle to inject bupivacaine and lidocaine into these sites.

4

26. Despite physical therapy, home exercise programs, pharmaceutical treatment, and trigger point injections, by March 21, 2021, Manheim was unable to perform the material and substantial duties of her occupation – playing the violin at a concert-symphony level. Her last day working as a violinist was March 21, 2021.

27. On March 26, 2021 Manheim underwent magnetic resonance imaging of her cervical and lumbar spine. The results were grossly abnormal. Her lumbar spine suffered from spondylotic changes with stenosis at L2-3, bilateral foraminal stenosis at L5-S1, and a posterior annular fissure of the disc at L5-S1. Her cervical spine suffered from multilevel spondylosis with moderate spinal canal stenosis at C5-6, moderate right foraminal stenosis at C3, osteophyte complex and reactive endplate changes at C5-6, and posterior disc osteophyte complex with reactive endplate changes and foraminal stenosis at C6-7.

28. On April 9, 2021, Manheim returned to Dr. Latif and reported that she continued to participate in physical therapy, without improvement. She reported continued lumbar, neck, and right shoulder pain, exacerbated by activity. A physical examination noted no improvement of her trigger points, referred pain, tenderness, and neck pain with range of motion. Dr. Latif recommended more trigger point injections.

29. Manheim underwent trigger point injections on May, 4, 2021, administered by Dr. Latif.

30. Manheim returned to Dr. Latif on June 4, 2021 for yet another round of injections. Dr. Latif injected bupivacaine and lidocaine into the following areas of Manheim's body: left cervical, right cervical, left upper trapezius, left levator scapulae, right levator scapulae, and right rhomboid. He again used a size 27-gauge needle for the injections.

31. On July 30, 2021, Manheim was seen by Dr. Narla at St. Luke's Primary Care for an annual examination. She reported continued difficulty with right shoulder impingement with chronic

pain and low back pain secondary to her degenerative disc disease. Dr. Narla identified the following diagnoses for this visit:

Impingement syndrome of right shoulder M75.41
Degenerative disc disease, lumbar M51.36
Chronic bilateral low back pain without sciatica M54.5, G89.29

32. On September 10, 2021, Manheim returned to Dr. Latif for another round of trigger point injections. Dr. Latif focused on Manheim's right upper trapezius, left upper trapezius, left levator scapulae, left cervical region, left thoracic region, right thoracic region, and right rhomboid.

33. On December 10, 2021, Manheim returned for more trigger point injections to the same areas. Dr. Latif noted that while prior injections had provided some limited temporary relief, Manheim continued to experience neck, back, shoulder and radicular symptoms. Dr. Latif noted that her "MRI results are consistent with her symptoms."

34. Manheim followed up with Dr. Latif on January 4, 2022. She noted that any relief she experienced from the trigger point injections were temporary. She reported that her pain continued, with neck, right upper back, and periscapular areas being the most severe. She reported stiffness, tightness, and muscle spasms. Dr. Latif concluded that Manheim was and had been unable to perform the material and substantial duties of her occupation as a violinist, stating:

She is a violinist.
She is not able to play due to the pain issues.

In fact, she has not played at all since the onset of the pain.
It started about 2 years ago.

She feels the pain substantially affects her ability to engage in daily activities.
She has trouble doing housework due to the pain.
It markedly reduces her quality of life.

She has not been able to work since the onset of the pain.

6

35. At the time Manheim was forced to cease working, she was and had been "Actively

   Employed."

36. Under the Plan, "Actively Employed" means:

**ACTIVE EMPLOYMENT** means actively at work on your Employer's scheduled work days. On your scheduled work days you must be performing for wage or profit from your regular occupation. You must be working at least the minimum number of hours as described under Eligible Group(s) in each plan.

If the symphony is not in session due to normal off season, active employment shall mean you are able to report for work with the Employer, performing all the regular duties of your regular occupation; as if symphony was in session.

Normal vacation is considered active employment.
Temporary and seasonal workers are excluded from coverage.

37. On July 1, 2021, the Symphony advised Unum that Manheim had been continuously and

   actively employed from at least April 1, 2020 through March 21, 2021, explaining:

**From:** slohe@kcsymphony.org <slohe@kcsymphony.org>
**Sent:** Thursday, July 1, 2021 3:01:24 PM (UTC-05:00) Eastern Time (US & Canada)
**To:** Perry, Brandon <BPerry2@UNUM.COM>
**Cc:** BenefitsEmail <BenefitsEmail@UNUM.COM>
**Subject:** RE: LTD Information Request Claim 19354777

Our normal full symphony orchestra services were cancelled April 2020 though September 2020 due to government shutdown orders from the Covid-19 pandemic. Therefore, we created smaller ensembles performances at outdoor venues and video work for our musicians. Therefore Francesca did not take any time off from April 1, 2020 through March 21, 2021.

March 21, 2021 was her last day worked. She has been taking sick leave since then.

38. Manheim timely applied for LTD benefits with Unum on June 14, 2021, providing Unum

   with fully executed claim forms, authorizations, and medical provider information.

39. On August 25, 2021, Unum denied Manheim's claim.

40. On March 18, 2022, Manheim submitted a written appeal of Unum's denial and provided

   additional evidence.

41. On or about March 30, 2022, Unum referred Manheim's claim for an internal medical review

   of her medical records to determine whether Manheim suffered from any limitations or

restrictions as a result of her conditions.

42. The review was not conducted by a medical doctor or specialist in orthopedic medicine but by a registered nurse, Elisabeth Israel ("Israel").

43. Israel did not identify a single limitation or restriction from Manheim's multiple, objectively verified orthopedic conditions.

44. On June 7, 2022, Unum announced its refusal to reconsider its August 25, 2021 denial and issued its final denial.

45. At all relevant times, Manheim was and remains "disabled" under the Plan.

46. Manheim has exhausted all administrative remedies.

<u>CAUSES OF ACTION</u>

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

47. Manheim realleges the preceding paragraphs as if fully set forth herein.

48. Manheim is entitled to all unpaid and accrued LTD benefits, as Unum:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Manheim's medical impairments and resulting limitations;

    c. Ignored evidence that Manheim was actively employed when she became disabled; and

    d. Issued an unfavorable decision that was arbitrary and capricious.

49. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Manheim is entitled to an award of actual damages for losses suffered.

50. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

8

51. Unum has not satisfied its obligation to pay Manheim LTD benefits.

52. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Manheim

    prays for judgment against Unum for unpaid LTD benefits, attorney's fees, costs, and

    prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

53. Manheim realleges the preceding paragraphs as if fully set forth herein.

54. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting
    management of such plan or exercises any authority or control respecting
    management or disposition of its assets, (ii) he renders investment advice for
    a fee or other compensation, direct or indirect, with respect to any moneys or
    other property of such plan, or has any authority or responsibility to do so, or
    (iii) he has any discretionary authority or discretionary responsibility in the
    administration of such plan."

55. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    "a fiduciary shall discharge his duties with respect to a plan solely in the
    interest of the participants and beneficiaries and—for the exclusive purpose
    of: (i) providing benefits to participants and their beneficiaries; and (ii)
    defraying reasonable expenses of administering the plan."

56. As the Plan's designated claims administrator and entity exercising discretion in claims

    administration, Unum is a fiduciary.

57. Manheim participated in Unum LTD benefits plans as previously indicated.

58. As the payor of benefits and the entity responsible for benefits determinations

    Unum operates under an inherent structural conflict of interest.

59. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v.*

    *Glenn*, 554 U.S. 105, 128 (2008) governs Unum's actions as a fiduciary.

60. Unum breached its fiduciary duty in:

9

a. Referring Manheim's claim for medical review to a person who was not able to exercise independent thought or judgment, or deviate from Unum's previously expressed position;

b. Referring Manheim's claim for medical review to a person who was not qualified to render any medical judgments or opinions;

c. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

d. Engaging in a direct structural conflict of interest by referring Manheim's claim to a person who is directly answerable to Unum and whose employment and compensation is determined by Unum; and

e. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations.

61. Unum denied Manheim's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

62. Unum failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Manheim and the Plan's participants and beneficiaries generally.

63. Unum's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

64. Unum's violations of regulations alone allow Manheim the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

65. Unum's violations of federal regulation also subject its decision to *de novo* review.

66. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Manheim prays for an order that Unum retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Unum in its fiduciary capacity; for an equitable accounting of benefits that Unum has withheld; for the disgorgement of profits enjoyed by Unum in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
    Derrick A. Pearce, Mo. # 42793
    Kyle H. Sciolaro, Mo. # 64568
    103 W 26th Ave., Ste. 290
    North Kansas City, MO 64116
    P: 816.781.4836
    F: 816.792.3634
    dpearce@burnettdriskill.com
    ksciolaro@burnettdriskill.com
    ATTORNEYS FOR PLAINTIFF

11